The next case this morning is 522-0313, People v. Evans. Arguing for the defendant appellant is Amanda Ingram. Arguing for the state is Stephanie Lee. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Ms. Ingram, if you are ready to proceed, you may do so. Good morning, your honors and counsel, and may it please the court. My name is Amanda Ingram and I represent Darian Evans. An issue here today is whether post-conviction counsel provided unreasonable assistance when she failed to recognize that guilty plea counsel was ineffective when he believed that Evans faced a mandatory minimum of 76 years in prison if he was convicted following a trial, where such a sentence could only be imposed following a hearing during which Evans' youth was considered. Evans was clearly prejudiced by these failures. The court stated on the record that it would have reduced the sentence to 40 years or shortly under those guidelines. Evans thus asked this court to reverse the dismissal of his petition and remand for further proceedings. First, guilty plea counsel was ineffective. Evans entered his plea on November 17, 2021. At that time, there were several cases establishing that de facto life sentences could not be imposed upon juvenile defendants without first considering in a meaningful way their youth and attendance circumstances. The prosecutor's position at the guilty plea that the firearm enhancement be imposed was not the end of the analysis. It was ultimately up to the court to decide whether it should be imposed, and it could only be imposed following a hearing during which the court exercised its discretion in determining whether it should be imposed in light of Evans' youth and immaturity. The court's statements at the guilty plea hearing that it was his thinking that the enhancement would apply following the 402 conference was premature. At the 402 conference, it's not a substitute for a sentencing hearing. There's no PSI at a 402 conference. There's not the opportunity for mental health records or other evidence of social emotional development relevant to sentencing current considerations for teenage defendants such as Mr. Evans. Additionally, it's worth noting that the enhancement language was removed from the charge prior to the plea. So if this enhancement information was so compelling, it doesn't make sense that they would remove this language from the charge prior to the entry of the plea. Counsel would have been up to date on all of these matters, and his misunderstanding of the apical law at that time deprived Evans of making a fully informed decision with regard to his plea. Evans was prejudiced by these failures. Had Evans known that a sentence of less than 76 years was still possible, it would have been rational to reject a plea. A sentence without firearm enhancements was entirely plausible as only the rarest juveniles will be found permanently incorrigible. Secondly, post-conviction counsel was unreasonable. Post-conviction counsel failed to recognize that Jones only applied to voluntary guilty pleas, and there was a clearly arguable basis to claim that Evans' plea in this case was not voluntary based on the ineffective assistance of guilty plea counsel. The state's recent citation to People v. Oak is not persuasive on this issue. First of all, in Oak, the appellate court remanded the petition to the circuit court with specific instructions on which issues to address. Post-conviction counsel requested the consideration of additional issues at that point, which the circuit court, in its discretion, declined to do. The appellate court affirmed this decision, noting that the court had not abused its discretion by strictly following the order for the remand. Here, by contrast, the ineffective assistance of counsel claim is not a new issue that could have been brought forward at the third stage, but was in Evans' original PC. And additionally, when PC counsel drafted her amended petition, it incorporated the original petition. So this issue of the ineffective assistance of counsel claim has not skipped steps and was not all of a sudden brought forward at the third stage hearing, but in fact, was available at the first stage, at the second stage, and was inexplicably dropped by PC counsel at the third stage. So again, this is factually and procedurally completely different from People v. Oak. And even if just hypothetically, we considered that this was a new issue, again, the court in Oak recognized that the circuit court has discretion as to whether to consider a new issue or not. So in this case, it's not a new issue, but even if it was here, the court was never even the chance to consider the new issue and to exercise its discretion as to whether to allow it or not. So Oak is simply not applicable to this case in any way. Had post-conviction counsel not dropped the ineffective assistance of counsel claim, which was, again, present on the face of the original petition, it would have given the court the was not voluntary, and thus Jones did not apply, and it would have given the circuit court an avenue to provide the relief that it appears he wanted to give him. Because at the end, again, the circuit court stated that, speaking frankly, I believe is the way he put it, that he would not have found that Mr. Evans was irredeemable, that he was permanently incorrigible. He recognized that as a 16-year-old defendant, he was not the rarest of juveniles against whom these enhancements should be imposed, and that he would have sentenced him to 40 years or shortly under 40 years. So the prejudice in this case is clear. It's clear from the basis that the court put on the record. If there are, are there any questions? If there are no questions, may I briefly conclude? Justice Welch, Justice Moore, any questions? No questions. Please go ahead and conclude if you'd like. Your Honor, thank you very much for your time. Again, Mr. Evans asked this court to reverse his conviction based on the ineffectiveness of guilty plea counsel and the unreasonableness of PC counsel, and I will rest until it's time for rebuttal. Thank you. Okay, you'll have five minutes in rebuttal. Mrs. Lee, if you would, there you go, you may begin. Thank you. Good morning, Your Honors. May it please the court, counsel, Stephanie Lee for the people. The issue seems to be being reframed yet again on this oral argument with all due respect because I'm now hearing that this, that counsel is saying that this was included in the amended PC by the amended PC incorporating it in the pro se petition. If you look at the initial opening briefs, it says that with a failure to amend it at the third stage. Essentially, if you look at the pro se petition, what you had was ineffective assistance of counsel for failing to investigate and present certain mitigating evidence, which of course is not listed in there as to what that would have been. The fact of the matter is, and aside from the fact that a third stage under that is paragraph 30 does say that you, procedurally, you cannot start bringing extra claims and amending at the third stage. Even if this court is to go ahead and reach the merits here, what we have was counsel giving absolute, perfect, very good advice at the time based on all of the factors that and information and the case law that they had available at the time. The defendant was charged with two separate offenses, a homicide offense and an attempt murder as well. So that's what brought you with the enhancements would have been to the 76. They passed the case. They continued the case. They did a 402. Everybody was trying to make sure, let's make sure we get this right. And the trial court mentioning Reyes said, I believe I would, in this case, put these enhancements given this defendant's history and given the facts of this particular case. Of course, it's a risk. That's what always happens with the plea. When you look at the language of Glover, you say, absent a realistic defense or some evidence showing that there was a very small risk in choosing to go to trial that the defendant would not approve that he would not have pled. So what you have here, we know there's no realistic defense that seems to be undisputed. So what we have would be what is not a small risk from going to trial, especially in light of the fact that the court had said, I would, you know, I would likely apply these enhancements. And the court was well aware and the attorney was well aware that there was, in fact, discretion. And even with these later cases that have come, which are really the law is still somewhat unsettled in terms of whether you do or don't even need that permanent incorrigibility finding in light of the U.S. Supreme Court's Jones holding, which was then mentioned in Dorsey as calling Holman into question. I believe there's a case right now that's been argued, not decided yet, but that issue is actually still to this day up in the air. So what you have is a defendant who was on juvenile probation for residential burglary, aggravated battery and multiple offenses of aggravated robbery at the time that he committed this offense. And we know that at least one of those aggravated robberies required an essay regarding gun violence. So this is not a first time offender here. And then they ambushed these people at the game that they intentionally was a dice game. They went in and ambushed them. Defendant moved them into a secluded room, shot and killed one and attempted murder on the other. So given this 45 year versus what the court said would probably happen, it was a very good choice to plead guilty. This plea also, if my calculations are correct, he would get out at 61 years of age. So we're not even talking, I know under buffer, 45 years would be de facto. But again, we didn't have buffer then. We certainly didn't have anything that said 45 years was de facto. And even with that, those enhancements could still in that de facto life could still be imposed as long as the factors were found. And everybody's best understanding at that point was this court was going to find them. Of course, when we got to the plea, the fact that I don't think you can consider the fact that was taken off at that time, because a plea is always a negotiation where you reduce. We also took off an attempted murder charge and offense, which again, there was no realistic defense against. So you can't look at what the plea was. That was both sides reaching an agreement. And as far as in 2022, the court making a what's essentially Monday morning quarterback in common of, oh, I'm not sure I could find incorrigibility that doesn't match with the information that they had. The permanent incorrigibility statement was still made without a PSI. So we still don't know. That's still an off the cuff dicta response. We don't know what would happen. The defendant would still be at risk of serving far more than 45 years if he had risked that. And I would just the admonishments, the court explained and discussed the 402 page are 111 and 112 with the defendant. And that was when it was clear that the court said I would likely apply these. There was absolutely that was good advice based on the risk that this defendant faced. If he were to, in fact, go to trial on these two charges. In which he does not have a defense to a realistic defense. So he was going to be found guilty and then roll the dice at sentencing. And this made sense to not do that. Again, the people's position is that really you cannot ask this. You cannot find the defense attorney's post-conviction counsel ineffective or unreasonable, excuse me, at the third stage for not adding a new claim. The claim itself has no merit when you get into it. The only way it would be merit possibly is if there was proof that the defense attorney actually said there is 100% no possibility you could ever get less than 76. And we know that isn't true. Because that was what was discussed at all of these 402 conferences. And in fact, the court on the record admonished, you know, if I were to find these didn't apply, you could get less than 76. But I'm likely to find they apply. You understand that? And the defendant did. So the people's position, again, is that this court shouldn't even reach the merits. If you do reach the merits, then it was actually not ineffective assistance and then therefore also not unreasonable assistance not to add that claim. If there's no further questions, the people would just ask that this be affirmed. Justice Welch, Justice Moore, any questions? No questions. All right. Mrs. Lee, thank you. Appreciate your argument. Ms. Ingram, you have five minutes. Thank you, Your Honors. Just a few notes in rebuttal. First of all, as to whether it's a new issue or a failure to amend or an issue, I apologize for any confusion. But the reality is that this issue is in the face of the original petition. It's in the record at page 92, where Mr. Evans says that his attorney, quote, dropped the ball on knowing the applicable case law. So this is clearly distinct from Oak. And whether it's phrased as an amending, the reality is that the PC Council inexplicably failed to argue this issue when it was there available for her to use at the third stage hearing. Again, the court's finding following the 402 conference that he thought at that time that the enhancement would be applied was premature. The enhancement is discretionary. It was discretionary and not mandatory. It could only be applied after there was a hearing. And this 402 conference was not a substitute for a full sentencing hearing at which the factors in Mr. Evans' favor could be meaningfully considered. Again, I do want to point out that, yes, Mr. Evans had was obviously this is a serious offense. He had some serious criminal history. This is a 16-year-old. And I implore this court to consider that a 16-year-old who's committing these kinds of offenses and has these kinds of history, that that is a very strong signal that the adults in his life have been failing him and have been failing him for years. And that's something that we now know should be taken into more consideration. But the fact that a 16-year-old has a significant criminal history is not so much an indictment on him, but the adults in his life who failed to put any guardrails against him to keep him in line. And so while, yes, obviously anybody who commits a crime has to face the system and all of that, but this is a 16-year-old. This is not somebody who's 18, 19, 20. It's not an emerging adult. This is somebody who is 16 years old. So that is the reason why his youth, those circumstances, and the circumstances of this indicative of the kind of youthful, irrational, not thinking ahead. It was a dice game that went bad. This is indicative of all those factors that we in the criminal justice system see so frequently among teenage defendants, which is why the circumstances of youth and immaturity must be taken into serious consideration. And this judge recognized that. This was not a different judge. This was the same judge. This is the same judge who recognized, at the end of the day, I wouldn't have found him permanently irredeemable or incorrigible. This is not somebody that he, at the end of it, would have been deserving of the significant enhancement. And again, he said, I would have sentenced him to 40 years, shortly under 40 years. Prejudice in this case is clear. Mr. Evans asked this court to reverse the circuit court's decision and remand for further proceedings. If there are no further questions. Mr. Evans, do you want to stress this more? No question. No question. Thank you, your honors. Thank you both for your arguments today. The court will take the matter under consideration and issue its ruling in due course.